Thank you. Good morning, Your Honors. My name is Sandra Isom, and I represent Federal Express Corporation, the appellant in this matter. The Caress Records statute at issue here in California is Labor Code 432.7. FedEx is asking this Court to reverse the granting of summary adjudication to the plaintiff in this case and reverse the partial denial of the summary judgment to FedEx on the same issue. It was the same issue in both motions, and this would result in entry of judgment for FedEx. This arrest record statute apparently is intended to protect persons who were arrested but not ultimately convicted in their quest to obtain and maintain employment without regard to the nature of the conduct. The statute is very broadly written. The problem with it is that implicit in this protection is the notion that the alleged conduct underlying the arrest or that arrests are traits that are implicitly unrelated to job qualifications. That notion has historically been the basis for civil rights protections in employment cases. For example, a person's race or sex is implicitly unrelated to job qualifications, and that should not be the basis for denying somebody a job. The statute is a misguided and questionable attempt to address the underlying policy concerns. Even the Americans with Disabilities Act recognizes that while disabled individuals are entitled to be free from employment discrimination, they must be able to perform the job without reasonable accommodation or with or without reasonable accommodation. And the employer's business judgment is recognized as a factor in making that determination. You know, I don't know. That makes some sense, but then there's this problem of the statute, and it doesn't say anything about that. Well, frankly, the statute doesn't say anything about how to deal with arrest pending dispositions. And when dealing with an employee whose guilt or innocence regarding job-related conduct is unclear, the employer has to be allowed to exercise reasonable business judgment. Well, the statute doesn't prohibit you, for example, Federal Express, an employer, from conducting your own investigation and then based on what you find, facts underlying what it was, then taking whatever disciplinary actions are appropriate under the circumstances. It just says you can't rely on the situation itself. An arrest. Say, well, arrest, therefore you're out. So you're fully free to conduct your own investigation. Well, what happened here? I mean, what did this person do? And if it's job-related, it's a driver and the driver was intoxicated or something like that, then you're home free. It simply says you can't use the simple fact of an arrest by itself. But you're free to do your own investigation, doesn't it? Actually, Your Honor, the – while the statute doesn't prohibit investigations, it doesn't require investigations. And the plaintiff's interpretation is that you just can't touch a person who's been arrested in their job. It's – the investigation actually came from our policy, our driver qualification policy that says, hey, take a look at what's going on with the employee and determine whether they should, in fact, be suspended. But how would you determine whether the discipline was solely because of the arrest or because of the conduct if you didn't have some underlying facts? Therein lies the inherent problem, is that you can ask for the underlying facts, as we did in this case. We asked Mr. Putow to provide a statement from the district attorney or provide information from his – from his attorney as to what happened. There was no breathalyzer resolved because this was an issue involving Cavite. We – our senior manager even attempted to get information from a buddy of his at the Redwood City Police Department to try to find out more about the arrest. All that management could find out was that he had, in fact, been arrested, which the presumption there is that he failed a field sobriety test. The police aren't going to release that information. Did FedEx know it was to do with Cavite as opposed to alcohol? Yes. Okay. Based upon what Mr. Putow told us, which was that he was at a social function, and I am not sure at what point we learned that there was an issue of whether it was this Cavite that was causing – that was the drug involved. But at some point we learned that. And what we knew is that we had a commercial driver who was under arrest pending disposition. For drinking tea. For drinking – for driving under the influence, whether it be Cavite, whether it be an overdose of cough medicine. You know, you can't even come to work at FedEx and drive one of our commercial vehicles. No, wait, wait, wait. Too much cough medicine. You say you didn't know – you say you don't know whether he had taken too much Benadryl or something, but was there any – didn't FedEx know that it was Cavite that was at issue? That was our information from Mr. Putow. We had nothing to indicate that it was alcohol. Okay. Right. So – And so he provided you with that information. He immediately went in to his supervisor like he was supposed to do under the rules and said, I've been arrested. Right. And then FedEx found out it was for driving under the influence of Cavite. Yes. Yes. But by the – by the very wording of the statute, an employee cannot assert a claim under the statute until the charges have been resolved. Well, that is what Pittman says, is it? Yes. Pittman says that the claim is not ripe until there's no – it's either Pittman or Faria that says the claim is not ripe until the charges are disposed of. And by the very wording of the statute, the – it says you can't base your decisions based upon an arrest that did not result in a conviction. In the Putow case – Putow, excuse me, in the Pittman case, I believe there was a conviction. There was a conviction. And in the Faria case, the decision about the person's employment was made after the charges were thrown out. So those are two distinguishing factors of both of those cases. But Pittman kind of stands for two things, and you could say they don't both make sense. But here's what it stands for, as I understand it. Number one, that this section prohibits disciplinary action based on an arrest that's pending disposition. So that's the interpretation of the statute, correct? That's the dicta in Pittman, yes. Well, and then it goes on to say, but you don't have an accrued action under the statute until you kind of go through the process and get exonerated or acquitted, correct? Correct. So if – I don't – I mean, we always argue, I'm sure people do, about dicta. I don't know why it's dicta when it says it quite clearly, and it's the only California case we have interpreting that piece of the statute. I don't think we have much choice but to follow it, do we? Well, you don't have to follow it because dicta is not binding on any court, and that – and I don't mean to get too technical, but that's how it's defined in Black's Law Dictionary, which I put in my brief. But why do you say it's dicta? Well, because the issue before the Pittman court was not – did not involve an arrest pending a disposition. The conviction had already occurred. So the court was just making actions with arrest pending disposition. Well, the clear purpose of Section 432.7 is to prevent the misuse of criminal offender records information, not to shelter an employee from an investigation by his employer for serious misconduct. So doesn't that suggest that you just can't use the record itself, that you can conduct your own investigation, as I said earlier? I mean, isn't that one of your arguments in this case, that you're disciplined based on what you found out, not just on the arrest record alone? And that is correct. And that takes us a step forward to, okay, if the statute does apply to arrest pending dispositions, then the question becomes, what is the employer's responsibility under the Code section? If the employer's responsibility is to conduct an investigation and make a decision based upon that investigation, then we have all sorts of questions that I've set forth in both briefs in terms of what's the standard, how far do we have to go, people don't have to incriminate themselves, they might refuse to talk to us. But in Hawaii, under the Keneshita case, in Hawaii, that statute is worded to say that you can't take any action based upon an arrest or court record, which means the person's case could be ripe in Hawaii even sooner than in California, because it doesn't say an arrest that did not result in conviction. It just says an arrest record. So then we have the Keneshita case that involved the employer looking at the arrest of some airline employees who were arrested for promoting cocaine, I think is the way that the allegation was worded. But the court said that the employer in taking action against these employees did not violate the statute because it wasn't based on the fact of the arrest. It was based on the employer's perception of the underlying conduct. I don't even think that there was an investigation or much of one. It was just that perception that it negatively impugned their business and that it was unsafe for their customers to have people working for them on an airline trafficking in cocaine. And that seems a quite fine result, which should have been the result in this case that that statute is going to apply. Well, what does the record tell us here to indicate that FedEx did not base its decision on the arrest as such? The evidence is that the arrest is the vehicle by which we learned of the alleged conduct. And what we based it upon was the fact that Mr. Putell came in and said that he had been driving at 3 o'clock on a Sunday morning and had been stopped by the police. And was arrested. And was arrested. And he had been at a social function drinking this coffee tea and that he couldn't provide any further information to us so that we could feel satisfied that he had not been driving under the influence. So you did it because he was arrested, didn't you? No, we did it because we learned of conduct that he was engaging in in his personal vehicle that was drinking coffee tea. Driving under the influence of a driver. That's what he was arrested for. The only information, I mean, how can he prove a negative? In other words, I was drinking coffee tea, that's what he went to trial on. Is he supposed to come in with a urinalysis or something that says, well, I didn't have something else in my system? That's what I'm having trouble understanding. Sometimes our employees do bring in a breathalyzer analysis, which usually says... Right, but usually when you get arrested, you don't say, excuse me, could I have a breathalyzer, please? I mean, either they do it or they don't do it. They didn't do one here, right? So he couldn't be expected to bring one in. That's correct. And so we had very little to go on. But, look, employers all the time conduct investigations of employee misconduct with limited information, and they make the best decision that they can make based upon that information. So the only information you had, then, was the arrest and the charged conduct. Is that correct? The information that we had also involved Mr. Putell's statement that he had imbibed of this concoction and the fact that he is a courier who drives our DOT vehicles. If Mr. Putell was a handler, we wouldn't be here today, because FedEx is concerned about arrests that affect, potentially affect or are related to the person's job. So the example I gave is if Mr. Putell had trespassed on somebody's property on his own time, we wouldn't care. We wouldn't be here today. And that's what other courts and statutes look at. Wisconsin specifically exempts not only pending charges from its arrest record statute, but it's also a statute that says you can't make decisions based upon convictions, but there's also exceptions for convictions if those convictions are job-related. Which way does a different statute in a different state cut when we have the California Court talking about the California statute? Well, the reason we look to these other state statutes is for analogies and for, you know, to compare why these statutes are either, you know, what are the reasons why these statutes should be interpreted in the way that we propose, because look at these other statutes and look at how the courts interpret them. And because we have a statute where we submit that it simply is not intended to address arrest pending disposition, we look elsewhere to look at what direction we can take. So we're supposed to ignore what the court said in Pittman, right? Well, I would say that you can choose to ignore it because it's not binding. You can choose to ignore a decision in the Sixth Circuit. Erie tells us that we're supposed to engage in predictive process, but if an intermediate appellate court has spoken to the issue, it's the only one that has done that, what's the predicate for saying that we're entitled to ignore it as a signal as to what the California Supreme Court would do if confronted by the question? Well, I'm going to have to repeat my answer that it's dicta. It's just simply not binding. And, yes, you can look at it and say, well, this is persuasive. Okay, Ms. Hyslop, we think this statute applies. Now let's move on from there. Okay. It applies. Then what? What does the employer do from there? Do we? Well, I mean, what the employer did here is that I think Mr. Wensko and Mr. Delgado said if an employee was arrested for DUI, then he would not be back on the road unless there was dismissal or documentation. So in other words, what they're basically saying is the mere arrest, absent vindication, is the basis for discipline. Well, it's not the mere arrest. It's the fact that it was an arrest involving driving a vehicle under the influence, which is what Kinoshita talked about, not specifically driving under the influence, but the court in Kinoshita basically said, well, because the employer felt, had the perception that this conduct was job related and impugned its reputation, then, in fact, its decision was not based solely upon the arrest. It was the employer's perception that the underlying alleged conduct was detrimental to its interest Here's the question I have in that, then. Is that a jury question? That's exactly what I was looking at. I'm kind of like, okay, he says this, but he really means that. And then Mr. Pitas says, no, it's just because I was arrested. Maybe we're left with a jury question on whether or not it was because of his arrest or because of some other things. Well, in the court in Kinoshita, I think, looked at it from a matter of law, because Okay. So your answer is you don't use – if we decide against you as a matter of law, then end of case. Yes. I'm saying that if the – if you can look at this and say, okay, the decision was based upon the employer's, even if it's just the perception of the underlying conduct, or in the instance of Matt Winskow, if it's a mistaken belief of FedEx policy, if he mistakenly believed that he could not return Mr. Putau to the road because of safety issues and because FedEx and he would be personally liable if Mr. Putau did something. Well, his – that's not based on the arrest. That's based on Mr. Winskow's perception that that's what the policy calls for. Is there some kind of immunity or something? I mean, that's like reading an immunity into the statute. Well, no. It's an issue of whether – It's a factual issue, isn't it? No. It's simply an issue of whether – what do we call the mere arrest, or based solely on the arrest, how do you define that? If he's basing his – again, the arrest was the vehicle by which we learned of the conduct. Mr. Winskow is thinking, well, based upon our policy, you know, we have the safety of our – of the public at issue, our customers, and I don't think he needs to be back on the road. He's not basing that on the arrest. Because, like I said, if Mr. Putau came in and said, I got arrested for trespassing, we'd be like, okay, whatever, get on the road. So it's not based on the arrest. It's based on the conduct underlying the arrest. Well, that's – there was a motion for summary judgment. The trial was on the question of damages. The motion for summary judgment raised this issue. Did you claim in the motion for summary judgment that your reasons for disciplining Mr. Putau came from your independent investigation, not just from the fact that he had been arrested? Yes. And you said that in your moving papers. Yes, and that included the fact that we couldn't get much information. So it was our investigation, which basically didn't get far because we couldn't get much information. Well, but what – that doesn't help you. What did you have? We had Mr. Putau's statement. We had the fact that he's a courier. And did you lay that out, that his statement was that he was driving under the influence of something? What did he say? He mentioned that he was – that he had been at a social function drinking this kava tea. Again, I don't know if he said that the first time he reported it, but at some point in the process, we learned that, that it was an issue of kava tea and not alcohol. And so we had to make a choice, and we had a Hobson's choice. Do we stick him back on the road and risk liability if he hurts somebody, or do we suspend him and risk liability for an arrest records lawsuit? It's an untenable position that we're put in. And frankly, it puts us in a worse position than if we had learned about the conduct from some other source. If his coworker came in and said, I was with Mr. Putau this weekend, and we were drinking kava tea, and he was wasted on it, and he was swerving down the road, we would then have a duty to investigate that and make a decision. There wouldn't be any liability there. The only reason we're facing liability is because we found out through an arrest. So we're actually at a worse disadvantage than we would be. And as Judge McKeown suggested, did you tell the court that there was a genuine issue of material fact on what was the predicate for your discipline, whether it was just the arrest that had resulted in a conviction or whether it was on other information? No, we argue that it simply was not based upon the arrest alone, which is the standard. It was based upon the underlying conduct. Well, wait a minute. As I understood the record, Wensko said that he, it was his understanding, he was required to keep Putau off the road if he was arrested. And how do you separate that from the determination that the decision to do that was based on the arrest? Well, because it was an arrest for driving under the influence that's addressed in our policy. It was not an arrest for trespassing or anything else. It's inextricably linked. But the Wisconsin legislature has made that distinction. The California legislature did not, right? Well, the California legislature basically says you can't do anything to anybody who's arrested, no matter what they're arrested for. Your construction allows you to use just the arrest. If it's an arrest for murder, you say, well, we're not kicking him out just because he was arrested. We're kicking him out because he was arrested for murder. No, what we're saying is. We didn't look into it. He was arrested for murder. It's not just a simple arrest. It was an arrest for murder. Well, what we're saying is what is that underlying conduct? Not just was it murder, was it trespass, was it. Yeah, but as Pittman says, you can look and find out. And if you have a sufficient basis based on your investigation, then you can discipline him if the rules were violated. But you just simply can't use arrest for murder, arrest for DUI, arrest for this, arrest for that. You've got to conduct your own independent investigation and conclude on the basis of that whether discipline is in order. And then how does the employer do that when it's alleged criminal conduct and the person has a right to remain silent, the police won't release any investigations? We're stuck. There's no win here for the employer. We're stuck. We're going to get sued one way or the other. It's bad policy. And I think I'm out of time. I'm sorry. All right. There's a lot of bad policy that comes out of legislatures. All right. Steven Murphy, appearing for Tafui Putau. Your Honor, I think that the counsel's last comment on bad policy is really what this appeal is about. This is an argument that FedEx simply doesn't like the statute, and they don't think it should be interpreted the way the California courts have interpreted it. These are arguments best made to the legislature and not to this court or any court. There's no question in this case that Mr. Putau was suspended because he was arrested. That was undisputed. The supervisor testified that's why he suspended him, and he would only let him drive once the arrest was cleared up. There's no question about that. California Labor Code prohibits that kind of conduct, and this is a case that's on all fours. Pittman, whether it's dicta or not, is the only case that interprets the language of the Labor Code. But let's say that they found out that Mr. Putau had had eight beers. Could they then have suspended him, in your view? That's a much different situation. If FedEx had found out that Mr. Putau drank eight beers and drove a vehicle, then that would not be based on the arrest. That would be based on the conduct. Exactly. Okay. If a co-worker came in and said, I was with Putau, and we were busted, and he was drinking kava tea and he was under the influence, and they suspend him or fire him on the basis of that, then it's fine. If it's based on something other than the mere arrest, I think FedEx is entitled to do that. And what about if it's a child? Let's say it's a child molestation situation and you run a daycare, and your employee is arrested for sexual abuse, but not related to your facility. You don't think that the employer could say, ooh, the crime of sex abuse cuts so close to my situation and what I do day in and day out with these children. I can't afford to have somebody on my premises who's got a pending sex abuse crime. Do you think they could suspend the person? Based on the mere arrest? No, I don't think they could. Based on the nature of the arrest. Based on because it's sex abuse? No. I don't think an employer can say, even though the statute says you can't take action because of an arrest, an employer can't say, well, if it's an arrest for something job-related, then we can take action. That's not what the statute says. There are some states that have statutes like that. California is not one of them. And so, I mean, the sex abuse situation, of course, is the extreme. And here, FedEx knew that Mr. Putau was drinking kava tea. They didn't bother researching whether kava tea could even influence your driving or done any kind of research whatsoever. And the fact, I think the record does indicate that Mr. Putau did have, I'm not sure if it was a breathalyzer or urinalysis, after his detention, and he told FedEx he had a zero, blood alcohol. So there was no evidence whatsoever that they either had or relied on in deciding to suspend him, other than the fact that he was arrested. And I submit this is a very straightforward case, and that the district court's adjudication was fully supported by the record. So let's say that they did find out that kava tea was hallucinogenic or whatever, makes you weave around. Then do you think they would be able to say, well, it's not because of his arrest, it's because we have an employee who drinks things that could affect their driving? Would they be able then to suspend him? I think that would be a different situation, yes. So if you read, if the headlines in the newspaper say, daycare worker arrested for child abuse, and you employ this person, can you discipline on the basis that you read it in the newspaper? Oh, I don't think so. You can't. If it's based on the arrest, no, not under that statute. I think the employee has an obligation under California law to ask the employee about the circumstances. Employee takes the fifth, says I'm not talking. My lawyer told me you don't talk. Then the employer is in a difficult situation, which ought to be addressed by the legislature, not by this Court in this case. Anything else? Nothing else. Thanks, counsel. Thank you. Do you want to respond? I'm out of time, I think, for my previous, I think. I've given you an opportunity to respond, take it or not. I would simply say that I agree that the legislature should address this, because the statute is not clear, and so FedEx should win. But just quickly on the public policy argument, the, because there are the two different claims, and, of course, if we win on the direct violation, the public policy doesn't matter. But just to talk about that just briefly, I would have to ask where is the public benefit in prohibiting employers from trying to protect the public from those awaiting trial? Typically, the public is benefited by the judge throwing the person in jail until the trial, because that's a protection of the public safety. Well, not typically. That's why we have fairly careful bail standards. We don't just throw people in jail because they've been arrested. Correct. But in terms of if there's an issue of public safety, that's generally, that's generally what results in somebody landing in jail, before their trial, is because of an issue of public safety. Could this case somehow be certified to the California Supreme Court for elimination from the State court as to what this means? Actually, I thought about that, Your Honor, in terms of making that request. I think there's a procedure to make that request. I think that's not a bad idea. I didn't do it because I heard that we don't have a lot to do. We don't have a batting average on that subject, except in insurance cases, for some reason. But basically, we're not talking about a broad class of potential victims with immutable traits. They're, you know, potentially felons and other criminal offenders awaiting trial. That is simply not a broad class that's in need of public policy protection. All right. Thank you. Thank you. This case is ordered and submitted. And we'll go to the last case on the oral argument calendar for today, which is Doe v. Mann. Thank you.
judges: Trott, McKeown, Shadur